**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BioWound Solutions, Inc.,<br>Plaintiff(s),<br>v.<br>Priority Wound Care LLC, et al.,<br>Defendant(s). | Case No. 2:26-cv-00920-___-NJK[1]<br>**Report and Recommendation**<br>[Docket No. 25] |

Pending before the Court is Plaintiff's amended motion for default judgment. Docket No. 25. For the reasons discussed below, the undersigned **RECOMMENDS** that the motion for default judgment be **GRANTED** in part.

## I. BACKGROUND

Plaintiff brought this case alleging insufficient payment in consideration of its shipment of medical-grade wound care products. *See* Docket No. 1. Plaintiff claims breach of contract.[2] Defendants have not appeared, prompting entry of default. Docket Nos. 19, 21. Plaintiff seeks default judgment against Defendants in the amount of $3,884,590.94. Docket No. 25.

## II. STANDARDS

"A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). Instead, whether to enter default judgment is a decision entrusted to the discretion of the district court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). This exercise of discretion involves

[1] This case has been proceeding before the undersigned magistrate judge as part of the opt-out consent program. *See* Docket Nos. 4-5; *see also* Gen. Order 2023-11. Because default judgment is warranted and Defendants have not yet appeared, a district judge must be assigned at this juncture.

[2] Plaintiff seeks default judgment on its breach of contract claim and, if such relief is granted, agrees to dismissal of its alternative claims. Docket No. 25 at 2. Hence, the undersigned focuses herein on the breach of contract claim.

consideration of several factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCoo*l, 782 F.2d 1470,1471-72 (9th Cir. 1986). Courts also have a duty to ensure that they have a proper basis for exercising personal jurisdiction over the absent defendant, *Tuli v. Republic of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999), as well as an ongoing duty to ensure that they have subject matter jurisdiction over the case, Fed. R. Civ. P. 12(h)(3). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting *Geddes v. United Financial Group,* 559 F.2d 557, 560 (9th Cir.1977)).

## III. ANALYSIS

### A. Threshold Jurisdictional Inquiries

The undersigned begins its jurisdictional inquiries and finds that they have been satisfied. First, Plaintiff has properly invoked the Court's diversity jurisdiction. Diversity jurisdiction exists when the amount in controversy exceeds $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332(a). The complaint alleges that Plaintiff is a Nevada citizen and that Defendants are citizens of Texas. *See* Docket No. 1 at ¶¶ 1-3. The complaint also seeks damages in excess of $75,000. *See, e.g.*, *id.* at ¶ 63. As such, a sufficient basis has been shown for diversity jurisdiction.

Second, Plaintiff filed summonses returned executed showing service on Defendant Priority Wound Care to an employee authorized to accept service, Docket No. 11, and on Defendant Shalonda Jacobs personally, Docket No. 14.[3] Such evidence suffices to show proper service. *See* Fed. R. Civ. P. 4(e)(2)(A); Fed. R. Civ. P. 4(h)(1)(B).

Third, the underlying contract at issue includes a choice of law and forum selection clause, identifying Nevada law as governing and federal and state courts in Nevada as the forum to hear

---

[3] Default has accordingly been entered against Defendants. *See* Docket Nos. 19, 21.

disputes. Docket No. 25-5 at ¶ 18(d). That provision indicates that "each [p]arty irrevocably submits to the exclusive jurisdiction" of federal and state courts in Nevada. *Id.* Such evidence establishes a basis on which to exercise personal jurisdiction over Defendants. *See, e.g.*, *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1052-53 (N.D. Cal. 2010).

**B. Entitlement to Entry of Default Judgment**

Weighing the *Eitel* factors in this case, entry of default judgment is warranted.

<u>(1) The possibility of prejudice to Plaintiff</u>

The first *Eitel* factor, regarding potential prejudice to the movant, supports entry of default judgment. The parties entered into a contract, Plaintiff performed its obligations under the contract, and Defendants neither objected to the products received in timely fashion nor made full payment. *See, e.g.*, Docket No. 25-4 at ¶¶ 2-5. Defendants' failure to respond or otherwise appear has prejudiced Plaintiff's ability to pursue its claim on the merits. *See, e.g.*, *Amini Innovation Corp. v. KTY Int'l Mtkg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011). This factor militates in favor of entering default judgment.

<u>(2)-(3) The merits of Plaintiff's claim and the sufficiency of the complaint</u>

The second and third factors, regarding the merits of the movant's substantive claim and the sufficiency of the allegations made, also support entry of default judgment. A claim for breach of contract in Nevada consists of the following elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant(s); and (4) damages. *Mooney v. Fife*, 118 F.4th 1081, 1099 (9th Cir. 2024) (quoting *Laguerre v. Nev. Sys. of Higher Educ.*, 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011)). The complaint pleads each of these elements, alleging that (1) Plaintiff entered into a written agreement with Defendants for medical-grade wound care products; (2) Plaintiff performed on the agreement by accepting Defendants' orders, shipping the products, and issuing invoices; (3) Defendants materially breached the agreement by failing to fully pay those invoices when due; and (4) Plaintiff suffered

damages from the nonpayment. *See* Docket No. 1 at ¶¶ 7-53.[4] These factors militate in favor of entering default judgment.

(4) The sum of money at stake in the action

The fourth factor, regarding the sum of money at stake, weighs in favor of entering default judgment. This factor requires consideration of "the amount of money at stake in relation to the seriousness of [the defendants'] misconduct." *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071 (D. Ariz. 2006). "If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored." *Id.* Plaintiff seeks to recover $3,884,590.94. In support of that request, Plaintiff submits unpaid invoice balances in the amount of $3,248,810.28, Docket No. 25-6, and has identified governing contractual provisions allowing it to also recover late fees, attorneys' fees, and costs, *see* Docket No. 25-5 at ¶ 8(c). This factor militates in favor of entering default judgment.

(5) The possibility of a dispute concerning material facts

The fifth factor, regarding the possibility of a dispute of material facts, also supports entry of default judgment. The potential for such a dispute is remote given that Defendants were properly served and chose to forego the opportunity to dispute the facts, which results in the material facts in the complaint being taken as true. *See Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005). Hence, there is little possibility of a dispute as to material facts and this factor militates in favor of entering default judgment.

(6) Whether the default was due to excusable neglect

The sixth factor, regarding whether the defaulting party failed to appear as a result of excusable neglect, also supports entry of default judgment. Service was effectuated months ago. Docket Nos. 11, 14. The deadline for Defendants to appear and respond likewise expired long ago. *See* Fed. R. Civ. P. 12(a). As such, default was entered roughly two months ago. Docket Nos. 19, 21. Defendants' failure to appear or otherwise take action to defend during this timeframe renders the potential existence of excusable neglect unlikely. *See LHF Prods., Inc. v. Boughton*,

[4] Defendants did make partial payments. *Id.* at ¶ 49. Nonetheless, millions of dollars remain owed. *See* Docket No. 25-6.

299 F. Supp. 3d 1104, 1116 (D. Nev. 2017). This factor militates in favor of entering default judgment.

(7) Policy favoring decisions on the merits

The final *Eitel* factor addresses the policy preference for deciding cases on their merits. "Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. As evidenced by the existence of Rule 55(b) providing for default judgment, however, this consideration alone is not dispositive. *See, e.g.*, *PepsiCo*, 238 F. Supp. 2d at 1177. In this case, Defendants failed to appear and a decision on the merits is impracticable, if not impossible. As such, the preference to decide cases on the merits does not preclude entry of default judgment.

**C. Amount to be Awarded in Default Judgment**

As to the amount to be awarded in default judgment, Plaintiff asks for several different categories of recovery, which the undersigned will address below.

(1) Damages

Plaintiff asks to recover $3,248,810.28 in damages for non-payment on the contract. *See* Docket No. 25-4 at ¶ 6. "Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment." *TeleVideo*, 826 F.2d at 917. With respect to damages, the plaintiff bears "the burden of proving damages through testimony or written affidavit." *Board of Trustees of the Boilermaker Vacation Tr. v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005).[5] Plaintiff supports its claim for damages with a declaration attaching exhibits of its contract with Defendants and its ledger identifying the dates and amounts of each invoice to Defendants, as well as the dates and amounts of each partial payment made. *See* Docket No. 25-6. The evidence establishes $3,248,810.28 in damages for breach of contract.

[5] "[A] default judgment for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981). A prove up hearing is not required in the circumstances of this case. *Cf. Private Funding Grp., LLC v. Goldshield Medline Grp., Inc.*, 2022 WL 18356997, at *6 (C.D. Cal. Dec. 9, 2022).

(2) Late Fees

Plaintiff asks to recover $580,146.59 in late fees. *See* Docket No. 25-4 at ¶ 9. In addition to damages for non-payment for goods received, a plaintiff may also seek to recover late fees that are allowed in the underlying contract. *See, e.g.*, *Intelepeer Cloud Comm's, LLC v. Explore Travels, Corp.*, 2016 WL 4699731, at *6 (N.D. Cal. Aug. 19, 2016). Plaintiff supports its claim for late fees with a declaration pointing to the provision in the underlying contract that it may assess a late payment charge of 1.5% per month. *See* Docket No. 25-5 at ¶ 8(c). Plaintiff also points to its ledger identifying the dates and amounts of each invoice to Defendants, as well as the dates and amounts of each partial payment made. Docket No. 25-6. Based on that record, Plaintiff calculated the late payment charge to be $580,146.59 through the date of the declaration. Docket No. 25-4 at ¶ 9. The evidence establishes $580,146.59 in recoverable late fees.

(3) Attorneys' fees

Plaintiff asks to recover $52,896.45 in attorneys' fees. *See* Docket No. 25-1 at ¶ 5; Docket No. 25-3 at ¶ 5. In cases involving default judgment for failure to appear or defend, the Court has an independent duty to scrutinize a request for attorneys' fees. *Vogel v. Harbor Plaza Center, LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018). Attorneys' fees in diversity cases are determined by state law. *Mangold v. Cal. Public Utilities Com'n,* 67 F.3d 1470, 1478 (9th Cir. 1995).[6] As to the amount of fees, "the method upon which a reasonable fee is determined is subject to the discretion of the court," which "is tempered only by reason and fairness." *Shuette v. Beazer Homes Holdings Corp.*, 124 P.3d 530, 548-49 (Nev. 2005) (quoting *University of Nevada v. Tarkanian*, 879 P.2d 1180, 1188, 1186 (Nev. 1994)). One permissible method of calculation is the lodestar approach, which involves multiplying "the number of hours reasonably spent on the case by a reasonable hourly rate." *See Shuette*, 124 P.3d at 549 & n.98 (quoting *Herbst v. Humana Health Ins. of Nevada*, 781 P.2d 762, 764 (Nev. 1989)); *see also Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319, 1325-26 (D. Nev. 2014). Nevada law requires courts to consider the qualities of the advocate, the

[6] Nevada law permits an award of attorneys' fees based on a contractual provision. *See* N.R.S. 18.010. Plaintiff is entitled to recover fees in this case. Docket No. 25-5 at ¶ 8(c) (contract provision that fees may be recovered for collection efforts).

character of the work done, the work actually performed by the lawyer, and the result. *See, e.g.*, *Hornwood v. Smith's Food King No. 1*, 807 P.2d 208, 213 (Nev. 1991) (citing *Brunzell v. Golden Gate National Bank*, 445 P.2d 31, 33 (Nev. 1969)).

i. Reasonable hours expended

The touchstone in determining the hours for which attorney's fees should be calculated is whether the expenditure of time was reasonable. *See, e.g., Marrocco v. Hill*, 291 F.R.D. 586, 588 (D. Nev. 2013). The Court "has a great deal of discretion in determining the reasonableness of the fee and, as a general rule, [an appellate court] will defer to its determination . . . regarding the reasonableness of the hours claimed by the [movant]." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 453 (9th Cir. 2010) (quoting *Gates*, 987 F.2d at 1398). The reasonableness of hours expended depends on the specific circumstances of each case. *Camacho v. Bridgeport Fin'l, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). In reviewing the hours claimed, the Court may exclude hours related to overstaffing, duplication, and excessiveness, or that are otherwise unnecessary. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

This is as routine a case as there is in federal court. *Accord* Docket No. 25 at 2 (acknowledging that this case "is a routine collection case as to which the defendant(s) have failed to appear"). According to the complaint, the parties entered into an agreement pursuant to which Plaintiff shipped goods to Defendants. When Defendants did not pay for those goods, Plaintiff brought suit for breach of contract. Defendants did not appear to defend themselves, so defaults were entered. Plaintiff now seeks default judgment. In short, the case involves a few simple filings that reasonably required only limited time investment. Although the default judgment papers do not total the amount of time being claimed, it is almost 90 hours by the Court's math. *See* Docket No. 25-1 at ¶ 5; Docket No. 25-3 at ¶ 5. Such an expenditure of time is implausible and unreasonable on its face. Indeed, decisions in this District for entry of default judgment upon the non-appearance of defendants routinely involve far fewer hours and much lower attorneys' fees than what is claimed here. *See Aquatech Corp. v. Dutch Barn LLC*, 2025 WL 3765034, at *1 (D. Nev. Dec. 29, 2025) (finding hours claimed to be "implausible and unreasonable" and reducing fee request from $58,331 to $10,000); *see also, e.g.*, *Sherman v. Carl Honung LLC*, 2025 WL

3033998, at *5 (D. Nev. Oct. 29, 2025) (finding 25.5 hours reasonably expended and awarding $8,925 in fees); *Van Norden v. Blackwater Legal Grp.*, 2024 WL 5077317, at *4-5 (D. Nev. Dec. 10, 2024) (approving fees sought of $3,247.25).[7]

In looking at the specific time entries on which Plaintiff claims fees, it is plain that a sufficient showing has not been made that many are recoverable. For example, the attorney hours include tasks like drafting a motion for summary judgment in mid-April before summonses were issued or service had even been effectuated. *See* Docket No. 25-1 at ¶ 5 (time entries from April 10, April 13, April 14, April 15); *but see* Docket Nos. 8-10, 14 (proposed summonses filed on April 24 and summons returned executed showing service on April 30 and May 20). While counsel now state that such drafting was useful to the later-filed motion for default judgment, *see, e.g.*, Docket No. 25-1 at ¶ 4, no meaningful discussion is provided to show that such time was reasonably expended in the circumstances of this case, *but see Kor Media Grp., LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D. Nev. 2013).[8] Similarly, Plaintiff seeks to be compensated for time spent analyzing a state court docket in a different case, *see* Docket No. 25-3 at ¶ 5 (time entries from April 9 and April 13), but there is no explanation as to how that time was reasonably spent in advancement of this case. In addition, there are numerous entries for "receipt" of items, preparing filings "for mail service," "compil[ing] . . . exhibits," internally calendaring deadlines, and other clerical tasks. *See, e.g.*, Docket No. 25-1 at ¶ 5 (time entries for May 26, May 27, and July 23); Docket No. 25-3 at ¶ 5 (time entry for March 26). There are also many entries for tasks related to the initial service of process efforts, such as searching for addresses and drafting various service-

---

[7] Courts may evaluate the reasonableness of fees by looking to awards in *similar* cases. Local Rule 54-14(a)(3)(L). The Court is not persuaded by Plaintiff's reliance on cases in which default judgment was entered as a sanction after the case had been contested. *See, e.g.*, *Aim High Investments Grp., LLC v. Spectrum Labs, LLC*, 2025 WL 1569268, at *1, 3 (D. Nev. June 3, 2025) (upon the corporate plaintiff failing to engage counsel, awarding $405,700 in default judgment for a counterclaimant in an exceptional patent case that involved discovery and motion practice).

[8] Quite obviously, a motion for summary judgment is predicated on evidence while a motion for default judgment is predicated on the existing allegations in the complaint, so it is not intuitive how the drafting of the former is easily translatable to the latter. Moreover, time entries for tasks like reviewing the local rules and standards for motions for summary judgment, *see* Docket No. 25-1 at ¶ 5 (entries from both attorneys on April 3, 2026), plainly do not inform motion practice for default judgment. Finally, the Court notes that the billing entries also separately identify significant hours spent on the motion for default judgment itself.

related documents. *See, e.g.*, Docket No. 25-1 at ¶ 5 (time entry for April 7); Docket No. 25-3 at ¶ 5 (time entry for April 4). "When clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *see also, e.g.*, *Blood v. Mercedez-Benz, USA, LLC*, 2024 WL 4875265, at *8 (S.D. Cal. Nov. 22, 2024) (collecting cases that time spent researching addresses, drafting documents related to service, and coordinating with process servers are clerical tasks that must be removed from the lodestar).[9] In short, large swaths of the time being claimed for attorneys' fees are not recoverable[10] and the Court will adjust the lodestar accordingly.[11]

Excluding the plainly non-compensable time for the reasons stated above leaves the following: 33.4 hours for Attorney McGinnis; 18.8 hours for Attorney Castillo; 1.1 hours for Senior Paralegal Ashcroft; and 4.9 hours for Paralegal Castaneda. While the tasks performed with respect to this remaining time are compensable as a general matter, the time identified appears unreasonable given the very simple nature of this lawsuit. As examples, there appears to be excessive internal conferencing among counsel and more time than would be expected spent on routine filings. *Cf. Cruz ex rel. Cruz v. Alhambra Sch. Dist.*, 601 F. Supp. 2d 1183, 1192-93 (C.D. Cal. 2009). As a result, the time on the remaining tasks will be reduced by a 10% haircut in the lodestar below. *See, e.g.*, *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) (addressing wide discretion for courts to impose a "haircut" of 10% or less).

---

[9] Clerical tasks must be excluded regardless of whether they are performed by an attorney or a paralegal. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989).

[10] It is a shaky strategy for counsel to overplay their hand so dramatically in any motion practice, but it is particularly troublesome to shoot for the moon in motion practice that will be decided presumably without adversarial briefing such that the Court is left to expend its scarce resources analyzing the issues *sua sponte*. *See Vogel*, 893 F.3d at 1160 ("In a case in which a defendant fails to appear or otherwise defend itself, however, the burden of scrutinizing an attorney's fee request—like other burdens—necessarily shifts to the court"). Counsel would be well advised to avoid this type of kitchen sink approach in future default judgment motion practice.

[11] Some entries include some recoverable tasks and some non-recoverable tasks. *See, e.g.*, Docket No. 25-1 at ¶ 5 (time entry for Paralegal Castenada for May 27). The Court has partially adjusted the time claimed therein accordingly.

ii. Reasonable hourly rates

Having decided the reasonable number of hours expended, the Court turns to the reasonable hourly rate. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "Affidavits of the [movant's] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the [movant's] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The Court may also rely on its own familiarity with the rates in the community to analyze those sought in the pending case. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

As to those working at Wargo French & Singer, Plaintiff seeks to recover attorneys' fees for Attorney McGinnis at an hourly rate of $820, for Attorney Castillo at an hourly rate of $455, and for Paralegal Casteneda at an hourly rate of $385. Docket No. 25-1 at ¶ 8. The papers attest that Attorney McGinnis has nearly 30 years of litigation experience, Attorney Castillo has two or three years of experience, and Paralegal Castaneda has over a decade of experience. Docket No. 25-1 at ¶ 7(i). As to those working at Snell & Wilmer, Plaintiff seeks to recover fees for Senior Paralegal Ashcroft at an hourly rate of $342. Docket No. 25-3 at ¶ 7.[12] The papers attest that Senior Paralegal Ashcroft has nearly 20 years of experience. *Id.* at ¶ 6(i).

Based on both the caselaw in this District and the undersigned's familiarity with the prevailing rates, the hourly rates being sought well exceed the prevailing rates. In urging otherwise, Plaintiff relies in significant part on cases involving "complex commercial litigation." *See, e.g.*, *in re USA Commercial Mortg. Co.*, 2013 WL 3944184, at *20 (D. Nev. July 30, 2013). By counsel's own characterization, however, this "is a routine collection case as to which the

[12] Plaintiff also seeks to recover for time expended by Attorney Foley at an hourly rate of $585, Attorney Pope at an hourly rate of $409.50, and Paralegal Soltero at an hourly rate of $205. *See* Docket No. 25-3 at ¶ 7. As none of the corresponding time is recoverable for the reasons discussed in the preceding section, there is no need to determine these hourly rates.

defendant(s) have failed to appear." Docket No. 25 at 2. The routine nature of the legal work obviously impacts the appropriate hourly rate to award. *See Blum*, 465 U.S. at 895 n.11 (explaining that the lodestar is calculated by looking to the rate "prevailing in the community *for similar services* by lawyers of reasonably comparable skill, experience, and reputation" (emphasis added)); *see also, e.g.*, *Mehta v. Victoria Partners*, 2023 WL 4256382, at *2 (D. Nev. June 27, 2023) (explaining that lower rates are properly awarded in cases that are "not particularly difficult to litigate"). In non-complex civil litigation, very experienced attorneys in this District are generally awarded fees with hourly rates in the range of $200 to $400, *see Iovino v. Am. Tr. Fin. Servs., Inc.*, 2025 WL 343218, at *2 (D. Nev. Jan. 29, 2025) (attorneys with more than 20 years and more than 25 years of experience, seeking and receiving hourly rates of $205 and $245); *see also, e.g.*, *Walton v. Grimes*, 2026 WL 1660495, at *2 (D. Nev. June 8, 2026) (hourly rate of $350); *Land v. Allied Collection Servs., Inc.*, 2025 WL 419208, at *2 (D. Nev. Jan. 10, 2025) (hourly rate of $400); *First Am. Title Ins. Co. v. Commerce Assocs., LLC*, 2025 WL 3898645, at *3 (D. Nev. Nov. 24, 2025) (hourly rate of $325), junior associates are generally awarded fees with hourly rates in the range of $95 to $200, *see, e.g.*, *Barnett v. Kijakazi*, 2022 WL 17668043, at *3 n.5 (D. Nev. Dec. 13, 2022) (collecting cases with associate rates ranging between $95 and $150); *Banerjee v. Continental Inc.*, 2018 WL 44689006, at *3 (D. Nev. Sept. 17, 2018) ("The court has approved rates ranging from $95 to $200 for less experienced associates"),[13] and paralegals are generally awarded fees with hourly rates in the range of $75 to $125. *See Allen J. v. Bisignano*, 2026 WL 881668, at *1 (D. Nev. Mar. 30, 2026) (hourly rate of $100); *see also, e.g.*, *Smith & Wesson Brands, Inc. v. SW N. Am., Inc.*, 2023 WL 7279950, at *3 (D. Nev. Nov. 3, 2023) (collecting cases that "[t]he typical range in this District for paralegal hourly rates is between $75 and $125").

---

[13] The hourly rate of $455 being sought in this routine collections case for a junior associate is not even in line with the prevailing rate in complex intellectual property cases. *See Verify Smart Corp. v. Scammell*, 2025 WL 3551997, at *4 (D. Nev. Dec. 10, 2025) (in complex case with multiple patents at issue, finding hourly rate of $315 for junior associate to be unreasonable and calculating lodestar with rate of $225).

In considering the prevailing rate for those performing similar services and having reasonably comparable backgrounds, appropriate hourly rates in this case are set at $350 for Attorney McGinnis, $175 for Attorney Castillo, $125 for Senior Paralegal Ashcroft, and $100 for Paralegal Castaneda.

iii. Lodestar

In accordance with the above, the undersigned calculates the lodestar as follows:

| Name | Hours | Rate | Total |
|---|---|---|---|
| Attorney McGinnis | 30.1 | $350 | $10,535 |
| Attorney Castillo | 16.9 | $175 | $2,957.50 |
| Paralegal Ashcroft | 1.0 | $125 | $125 |
| Paralegal Castaneda | 4.4 | $100 | $440 |

As such, the default judgment should include attorneys' fees in the amount of $14,057.50.

(4) Costs

Plaintiff asks to recover costs in the amount of $2,487.62. *See* Docket No. 25-1 at ¶ 6; Docket No. 25-1 at ¶ 5. The costs are recoverable by rule and/or by contract. *See* Fed. R. Civ. P. 54(d)(1); Docket No. 25-5 at ¶ 8(c). Moreover, the costs are reasonable. As such, the default judgment should include costs in the amount of $2,487.62.

## IV. CONCLUSION

For the reasons discussed above, the undersigned **RECOMMENDS** that the motion for default judgment be **GRANTED** in part. More particularly, default judgment should be entered on Plaintiff's breach of contract claim in the amount of $3,845,501.99, which includes damages ($3,248,810.28), late fees ($580,146.59), reasonable attorneys' fees ($14,057.50), and costs ($2,487.62). Once default judgment is entered, the Court may dismiss Plaintiff's alternative claims for breach of the implied covenant of fair dealing (second claim) and unjust enrichment (third claim). The Clerk's Office is **INSTRUCTED** to assign a district judge to this case.

Dated: August 24, 2026

Nancy J. Koppe
United States Magistrate Judge

**NOTICE**

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation must file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).